**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | **Chapter 11** |
| | **Case No. 07-13532 (REG)** |
| **PLVTZ, Inc.,**[1] | |
| Debtor. | |

## STIPULATION AND FINAL ORDER
## AUTHORIZING USE OF CASH COLLATERAL
## AND GRANTING ADEQUATE PROTECTION AND
## OTHER RELIEF

THIS MATTER having come before the Court on the Motion (the "**Motion**") of PLVTZ, Inc. (f/k/a PLVTZ, LLC) ("**PLVTZ**" or the "**Debtor**"), as a debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Case**") seeking, among other things, entry of this order (this "**Final Order**") providing for the following relief:

(i)    Authorizing the use of "cash collateral" (the "**Cash Collateral**") as such term is defined in section 363 of chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**") in which the Agent, the Lenders and the Debenture Holder (as such terms are defined below) each have an interest;

(ii)    Providing adequate protection to the Agent, the Lenders and the Debenture Holder for any diminution in value of their respective interests in the Pre-Petition Collateral (as defined below), including the Cash Collateral; and

(iii)    Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order.

---

1    The Debtor, PLVTZ, Inc. (Employer's Tax Identification No.: 56-2535090), is a Delaware corporation. The address of the Debtor is 233 Broadway, 23rd Floor, New York, NY 10279.

The Court having considered the Motion, the Declaration of Kathleen M. Guinnessey in support of the Debtor's first-day motions and orders, the exhibits attached thereto, the evidence submitted at the interim hearing on the Motion conducted on November 9, 2007 (the "**Interim Hearing**"); and the statements of counsel on the record of, and the evidence submitted at, the final hearings on the Motion conducted on November 29, 2007 and December 3, 2007 (collectively, the "**Final Hearings**"); and due and proper notice of the Motion and the Final Hearing having been given in accordance with Rules 2002, 4001(b), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and this Final Order also embodying certain reasonable compromises and settlements that, based on the evidence presented to the Court at the Final Hearing on December 3, 2007 satisfy in all respects the requirements of Bankruptcy Rules 2002(a)(3), 4001(d) and 9019, and the Court finding that such compromises and settlements are in the best interests of the Debtor, its estate and creditors; and it appearing that final approval of the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and otherwise is fair and reasonable and in the best interests of the Debtor, its creditors, its estate and its equity holders, and is essential for the continued operation of the Debtor's business; and all objections to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL HEARINGS, IT IS HEREBY STIPULATED BY THE UNDERSIGNED PARTIES AND THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

      A.      <u>Petition Date</u>. On November 8, 2007 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York.

B.        Debtor in Possession.  The Debtor has continued in the management and operation of its business and property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case.

C.        Jurisdiction. This Court has jurisdiction over these proceedings and over the property affected hereby pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

D.        Committee Formation.  On November 16, 2007, the Office of the United States Trustee appointed an official committee of unsecured creditors in this Case (the "**Creditors' Committee**").

E.        Acknowledgements and Agreements.   After consultation with their respective attorneys and financial advisors, and as part of the settlement and release of claims of the Debtor's estate embodied in this Final Order, but without prejudice to the rights of parties in interest as set forth in paragraph 12 below, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs E(i) through E(ix) hereof shall be referred to herein as the "**Debtor's Stipulations**"), and the Creditors' Committee stipulates, acknowledges and agrees solely to the extent that paragraphs E(i) through E(ix) hereof relate to the Debenture Holder and the Debenture Holder's claims and liens (the "**Committee Stipulations**") that:

(i)        Secured Credit Agreement.  Prior to the commencement of the Case, the Debtor was a borrower under that certain Secured Credit Agreement dated as of December 21, 2006 (as amended and in effect and together with all related documents and agreements, including that certain Security Agreement (as defined below), the "**Secured Credit Agreement**"), by and among the Debtor as borrower, PLVTZ Holdings II, LLC as guarantor ("**Holdings**"), General Electric Capital Corporation as agent and lender (the "**Agent**") and the lenders party thereto

(collectively with the Agent, the "**Lenders**"). As of the Petition Date, the Debtor owed obligations to the Agent and the Lenders under the Secured Credit Agreement of at least $44,000,000 for outstanding revolving loans, term loans, advances and/or other financial accommodations (plus any and all other unpaid principal, accrued and unpaid interest, unpaid fees (including any early termination fees) and attorneys' fees, treasury, cash management and derivative obligations, and other charges, amounts and costs owing, accrued, accruing or chargeable in respect of any of the Debtor's obligations pursuant to the Secured Credit Agreement whatsoever of any kind or nature, whether existing or contingent, and including all "Obligations" as defined under the Secured Credit Agreement, the "**Senior Obligations**").

(ii)    <u>Security Agreement</u>.  The Debtor is a party to that certain Security Agreement dated as of December 21, 2006 (the "**Security Agreement**") pursuant to which the Debtor granted valid first-priority liens and interests to the Agent, for the benefit of itself and the Lenders (collectively the "**Senior Liens**"), in and upon substantially all of the Debtor's right, title and interest in and to all personal property and other assets whether then owned or thereafter acquired or arising (collectively, the "**Pre-Petition Collateral**") including, without limitation, all Accounts, Chattel Paper, Documents, General Intangibles (including payment intangibles and Software), Goods (including Inventory, Equipment and Fixtures), Instruments, Investment Property, Deposit Accounts (including Blocked Accounts, Concentration Accounts, Disbursement Accounts, and all other bank accounts and all deposits therein), all money, cash or cash equivalents, all Supporting Senior Obligations and Letter-of-Credit Rights, all commercial tort claims, and to the extent not otherwise included, all Proceeds, tort claims, insurance claims and other rights to payment not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each

of the foregoing (but excluding all Excluded Collateral).    As of the Petition Date, the Senior Liens were valid, properly perfected and unavoidable security interests with priority over any and all other security interests in the Pre-Petition Collateral except for those certain Permitted Liens under the Secured Credit Agreement (to the extent any valid, properly perfected, unavoidable, and senior Permitted Liens exist, they are referred to herein as "**Prior Liens**"). To the extent not otherwise defined herein, capitalized terms in this paragraph shall have the meaning ascribed to such terms in the Security Agreement.2

(iii)    <u>Secured Debenture</u>. Prior to the commencement of the Case, the Debtor issued to YA Global Investments, L.P. (the "**Debenture Holder**") that certain $22,000,000 Secured Convertible Debenture due August 8, 2010 (together with all related documents and agreements, including that certain Debenture Security Agreement (as defined below), the "**Secured Debenture**").    The Secured Debenture was  issued pursuant to a Securities Purchase Agreement, dated concurrently with the Secured Debenture.    As of the Petition Date, the Debtor's obligations under the Secured Debenture included outstanding principal plus accrued and unpaid interest in excess  of $22,000,000 (the "**Debenture Junior Obligations**" and, together with the Senior Obligations, the "**Secured Obligations**").

(iv)    <u>Debenture Security Agreement</u>.    As security for the Debtor's obligations under the Secured Debenture and pursuant to that certain Security Agreement dated as of August 8, 2007 (the "**Debenture Security Agreement**"), the Debtor granted to the Debenture Holder certain junior liens and interests in and upon the Pre-Petition Collateral (the "**Debenture Junior**

---

2        Nothing herein shall constitute a finding or ruling by this Court that any of the Prior Liens are valid, senior, perfected and unavoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtor, the Creditors' Committee, the Debenture Holder, the Agent or the Lenders to challenge the validity, priority, perfection and extent of any such Prior Liens. For the avoidance of doubt, the Agent's liens have priority over and above all other liens except for those liens which were valid, senior, perfected and otherwise unavoidable as of the Petition Date.

Liens*" and, together with the Senior Liens, the **"Pre-Petition Liens"**).

(v)    <u>Subordination Agreement</u>.    The Agent and Debenture Holder are party to that certain Subordination Agreement dated as of August 8, 2007 (as amended, the "**Subordination Agreement**"), pursuant to which, among other things, the Debenture Junior Liens were expressly subordinated to the Senior Liens and any and all Debenture Junior Obligations were expressly subordinated in right of payment to the Senior Obligations, in each case in accordance with the terms of the Subordination Agreement.

(vi)    <u>Cash Collateral</u>.    The Debtor represents that all of the Debtor's cash, including cash in its deposit accounts, wherever located,  whether as original collateral or products of other Pre-Petition Collateral, constitutes Cash Collateral of the Lenders and the Debenture Holder.

(vii)    <u>Validity and Priority of Pre-Petition Liens and Secured Obligations</u>. (a) The Pre-Petition Liens are valid, binding, enforceable, and perfected liens that are senior to any and all other liens on Pre-Petition Collateral other than Prior Liens (if any) and which, except for the subordination of the Debenture Junior Liens to the Senior Liens in accordance with the Subordination Agreement, are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Secured Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtor that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Secured Credit Agreement, the Secured Debenture and the Subordination Agreement, (c) no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any of the Secured Obligations exist, and except for the subordination of the Debenture Junior Obligations to the Senior Obligations in accordance with the Subordination Agreement, no portion of the Secured Obligations is subject to avoidance, recharacterization or

subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (d) the Debtor and its estate have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including without limitation claims under chapter 5 of the Bankruptcy Code, against the Agent, the Lenders, the Debenture Holder and/or their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees, (e) as of the Petition Date, the value of the Pre-Petition Collateral exceeded the amount of the Senior Obligations, and accordingly the Debtor consents to the allowance of the Senior Obligations as fully secured claims within the meaning of section 506 of the Bankruptcy Code, (f) any payments made or to be made on account of the Senior Obligations, including Adequate Protection Payments made in accordance with the Stipulation and Interim Order Authorizing Use Of Cash Collateral And Granting Adequate Protection entered by the Court on November 9, 2007 (the "**Interim Order**"), have been or will (i) be for the benefit of the Agent or Lenders on account of amounts in respect of which the Agent and Lenders were oversecured, (ii) be payments out of the Agent's and Lenders' Pre-Petition Collateral, and (iii) not diminish any property otherwise available for distribution to general unsecured creditors.

(viii)    Default by the Debtor.    On November 5, 2007, the Debtor received notice from the Debenture Holder that it had accelerated the maturity of the Secured Debenture, and on November 7, 2007, the Agent sent to the Debtor a Notice of Default, Reservation of Rights and Assessment of Interest at the Default Rate.    The Debtor acknowledges and stipulates that the acceleration of the Secured Debenture constitutes an Event of Default under the Secured Credit Agreement.

(ix)    No Other Liens on Leases or Additional Agent Merchandise.    The Pre-Petition Collateral did not include (i) the Debtor's real property leases (the **"Leases"**)   or (ii) the third-

party merchandise sold by the Purchase Agent pursuant to the Purchase Agreement (*i.e.,* the

merchandise comprising "Additional Agent Merchandise" under the Purchase Agreement) (the

**"Additional Merchandise"**).   There are no other liens or security interests on proceeds of the

Leases or the proceeds of Additional Merchandise other than the liens of the Purchase Agent

under Purchase Agreement, the Senior Replacement Liens and Debenture Replacement Liens

(each as defined below) granted under the Interim Order.

F.   <u>Additional Creditors' Committee Stipulation</u>.   After consultation with its

attorneys and financial advisors, and as part of the settlement and release of claims of the

Debtor's estate embodied in this Final Order, the Creditors' Committee further admits, stipulates,

acknowledges and agrees that as of the Petition Date, the value of the Agent and Lenders' interest

in the Pre-Petition Collateral was $46,936,000 (such value calculated after taking into account or

net of the Agreed 506(c) Claims (as defined below)), which amount exceeds the amount of the

Senior Obligations.   Accordingly, the Creditors' Committee consents to the allowance of the

Senior Obligations as fully secured claims (up to $46,936,000) within the meaning of section 506

of the Bankruptcy Code and agrees that any payments made or to be made on account of the

Senior Obligations (up to $46,936,000) have been or will be for the benefit of the Agent or

Lenders on account of amounts in respect of which the Agent and Lenders were oversecured and

do not diminish any property otherwise available for distribution to general unsecured creditors.

The Creditors' Committee further agrees and stipulates, subject only to its rights under paragraph

12 to investigate and challenge the validity, priority and perfection of the Senior Obligations and

the Senior Liens, that the Debtor and its estate have no offsets, defenses, claims, objections,

challenges, causes of action, and/or choses in action, including without limitation claims under

chapter 5 of the Bankruptcy Code, against the Agent, the Lenders, the Debenture Holder and/or their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees.

G.    The Interim Order.    On November 9, 2007, the Court entered the Stipulation and Interim and Proposed Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection (Docket No. 63).

H.    Section 506(c) and 552(b) Waivers.    In light of their agreement to consent to the Debtor's use of Cash Collateral (including the payment of certain expenses of the Debtor as set forth in the Cash Collateral Budget (as defined below) and the initial cash collateral budget attached to the Interim Order), the use, sale or lease of other Pre-Petition Collateral, the subordination of the Pre-Petition Liens, the Senior Replacement Liens and the Debenture Replacement Liens on the Purchased Assets subject to the Purchase Agreement (each as defined below) and the subordination of their liens and superpriority claims to the Carve Out, the Agent, the Lenders and the Debenture Holder are entitled to, and hereby receive, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.    Lenders' Adequate Protection.    As a result of the use of its Cash Collateral, the use, sale or lease of other Pre-Petition Collateral authorized herein, the subordination of the Senior Liens and the Senior Replacement Liens on the Purchased Assets subject to the Purchase Agreement and as authorized herein, subordination to the Carve-Out, and the imposition of the automatic stay, the Agent is entitled to receive, for the benefit of itself and the Lenders, adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code, but solely to the extent of any diminution in the value of their interests in the Pre-Petition

Collateral (including the Cash Collateral) resulting from the Debtor's use, sale or lease of the Pre-Petition Collateral (including the Cash Collateral) during the Case, subordination to the Carve-Out, or the imposition of the automatic stay. As adequate protection, the Agent, for the benefit of itself and the Lenders, will receive: (1) the Senior Replacement Liens, (2) the Senior Superpriority Claim, (3) the Adequate Protection Payments, and (4) the Pre-Petition Indemnity Account (each as defined below).

J.    <u>Debenture Adequate Protection</u>.    As a result of the use of its Cash Collateral, the use, sale or lease of other Pre-Petition Collateral authorized herein, the subordination of the Debenture Junior Liens and the Debenture Replacement Liens on the Purchased Assets subject to the Purchase Agreement as authorized herein, subordination to the Carve-Out, and the imposition of the automatic stay, the Debenture Holder is entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code, but solely to the extent of any diminution in the value of its interest in the Pre-Petition Collateral resulting from the Debtor's use, sale or lease of the Pre-Petition Collateral (including the Cash Collateral) during the Case, subordination to the Carve-Out, and the imposition of the automatic stay. As adequate protection, the Debenture Holder will receive the Debenture Replacement Liens (as defined below).

K.    <u>Sale Transaction</u>.    On December 3, 2007, the Court also heard the Debtor's Motion requesting, *inter alia*, the issuance and entry of an order (the "**Sale Order**"): (a) authorizing the Debtor's conduct of "going out of business", "store closing", or similar themed sales at the Debtor's retail store locations and distribution centers as identified therein (the "Sale"), (b) authorizing the Debtor's entry into the Agreement between Hilco Merchant Resources, LLC, HRE Holdings, LLC, Tiger Capital Group LLC, SB Capital Group, Planned

Furniture Promotions, Inc., Kimco Realty Services, Inc. (collectively, the "**Purchase Agent**"),

the Debtor and the Agent dated as of November 29, 2007, (the "**Purchase Agreement**").

L.    <u>Necessity of Relief Requested</u>.    The ability of the Debtor to finance its

operations requires the use of Cash Collateral, absent which immediate and irreparable harm will

result to the Debtor, its estate and creditors and the possibility for a successful chapter 11 case. In

the absence of the use of Cash Collateral, the continued operation of the Debtor's businesses and

the orderly liquidation of the Pre-Petition Collateral would not be possible and serious and

irreparable harm to the Debtor, its estate and creditors would occur.  The Debtor does not have

sufficient available sources of working capital and financing to operate its businesses in the

ordinary course of business or maintain its property without the use of Cash Collateral.   The

relief requested in the Motion is therefore necessary, essential, and appropriate for the continued

operation of the Debtor's business and the management and preservation of its property.   The

Agent, the Lenders, the Debtor, the Debenture Holder and the Creditors' Committee have

negotiated at arms' length and in good faith regarding the Debtor's use of Cash Collateral to fund

the continued operation of the Debtor's business during the Specified Period (as defined below)

in accordance with this Final Order, including, but not limited to the settlement and release of

claims embodied in this Final Order. The Agent, the Lenders and the Debenture Holder have

agreed to permit the Debtor to use their Cash Collateral for the Specified Period subject to the

terms and conditions set forth herein, which terms and conditions are fair and reasonable and

have been stipulated to by the Debtor and the Creditors' Committee in the exercise of their sound

business judgment.  The settlements and releases of claims embodied in this Final Order are fair

and reasonable, and are in the best interests of the Debtor, the Debtor's estate and its creditors.

Entry of this Final Order is in the best interests of the Debtor and its estate and is authorized by

the Bankruptcy Code including, without limitation sections 105(a), 361, 362 and 363 thereof.

M.    <u>Entry of Final Order</u>.   This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the conclusion of the Final Hearing on December 3, 2007.

NOW, THEREFORE, on the Motion of the Debtor and the record before the Court with respect to the Motion, and with the consent of the Debtor, the Agent, the Lenders, the Debenture Holder and the Creditors' Committee to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

<u>THE COURT HEREBY ORDERS THAT</u>:

1.    <u>Motion Granted</u>.   The Motion is granted subject to the terms and conditions set forth in this Final Order.   All objections to the Motion, to the extent not withdrawn or resolved, are hereby overruled.   Notwithstanding anything to the contrary herein, nothing in this Final Order affects, alters or impairs the rights or obligations of any party under the Purchase Agreement or the Sale Order.

2.    <u>Authorization to Use Cash Collateral</u>.   Pursuant to the terms and conditions of this Final Order, the Debtor is authorized to use Cash Collateral for the period (the "**Specified Period**") from the Petition Date through the earlier of (a) this Court's entry of an order terminating such authority, or (b) the date which is three (3) business days following notice by the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder) to the Debtor that an Event of Default (as defined below) has occurred and is continuing. Except as otherwise expressly provided herein, Cash Collateral may be used during the Specified Period solely up to the amounts (subject to the 5% variance described below) and substantially for the purposes

identified in the cash collateral budget approved by the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder) and attached hereto as Exhibit "A" (the '**Cash Collateral Budget**"); *provided, however*, that after notice of an Event of Default and prior to the termination of the Specified Period the Borrower may use Cash Collateral solely to meet payroll obligations and pay expenses essential to the preservation of the Debtor and its estate or as agreed by the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder) in its sole discretion, provided that any such payments are made in a manner consistent with the terms and provisions of the Cash Collateral Budget.    Until payment or cash collateralization in full of the obligations described in paragraphs 7 and 26(n), all Cash Collateral use must be strictly in accordance with the terms of the Cash Collateral Budget and the Debtor shall not, without the prior written consent of the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder), (i) use Cash Collateral with respect to any one line item in the Cash Collateral Budget in an aggregate amount in excess of five percent (5%) of the amount originally identified for that line item in the Cash Collateral Budget, or (ii) make payment of any cost or expense in advance of the time for payment reflected in the Cash Collateral Budget (unless funding for the advance payment of such expense has been provided by the Purchase Agent).    Any extension or other modification of the Cash Collateral Budget shall be subject to the prior written approval of the Agent and the Lenders (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder).    The right of the Debtor to use Cash Collateral, including any amounts in the account maintained by the Debtor with Bank of

America, N.A. with account number 1499321829 or in the account maintained by the Debtor with Mellon Bank, N.A. with account number 0264401 (collectively, the "**Concentration Accounts**" and each a "**Concentration Account**") on the Petition Date or credited to a Concentration Account on or after the Petition Date, shall terminate at the expiration of the Specified Period; provided however that the foregoing limitation is not intended to limit the Purchase Agent's ability, in accordance with the Purchase Agreement, to access Proceeds (as defined in the Purchase Agreement) from sale to customers of the Debtor contained in so called "local" or "store level" depository accounts. Nothing in this Final Order shall authorize the disposition of any Pre-Petition Collateral outside the ordinary course of business or the Debtor's use of the Cash Collateral resulting therefrom without the prior written consent of the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder). This Final Order is not intended to affect the Purchase Agent's rights to offset Proceeds paid by customers and held by Merchant as set forth in Section 3.7 (b) of the Purchase Agreement.

3.    Adequate Protection of Agent and Lenders.    As adequate protection of the interests of the Agent and Lenders in the Pre-Petition Collateral (including the Cash Collateral) against any diminution in the value of their interests in the Pre-Petition Collateral (*i.e.*, a value of $46,936,000) as a result of the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Collateral, the subordination of Senior Liens and Senior Replacement Liens on the Purchased Assets, subordination to the Carve Out, or the imposition of the automatic stay, the Agent and the Lenders shall receive adequate protection as follows:

(a)    Senior Replacement Liens.    Pursuant to sections 361 and 363(e) of the Bankruptcy Code the Agent and Lenders are hereby granted, on a final basis, additional and

replacement continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens (collectively, the "**Senior Replacement Liens**") on all Pre-Petition Collateral (including without limitation, the Purchased Assets) and, except for causes of action under chapter 5 of the Bankruptcy Code, any and all presently owned and hereafter acquired assets and real and personal property of the Debtor (including without limitation, any and all rights of the Debtor under the Purchase Agreement), together with any proceeds thereof (the "**Collateral**"). The Senior Replacement Liens shall be senior and prior to all other interests or liens whatsoever in or on the Collateral, including, without limitation, the Debenture Replacement Liens (as defined below), and shall be subject and subordinate only to the Carve Out, the Prior Liens, and, subject to the conditions set forth in paragraph 8, the Purchase Agreement Liens (as defined below);

(b)     <u>Superpriority Claim</u>.     The Agent and the Lenders shall have an allowed superpriority administrative expense claim (the "**Superpriority Claim**"), which shall have priority in this Case and in any case under chapter 7 of the Bankruptcy Code upon conversion of this Case or any other action, case or proceeding related to or arising out of any of the foregoing (collectively, the "**Successor Case**") under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b) (to the extent permitted by law) 1113, and 1114 of the Bankruptcy Code and shall be subordinate only to the Carve Out and to the rights and interests of the Purchase Agent in the Purchased Assets; *provided, however,* that the Superpriority Claim shall not be

satisfied using any proceeds of the Debtor's causes of action under chapter 5 of the Bankruptcy Code other than proceeds of causes of action arising under section 549 of the Bankruptcy Code. Except for the Carve Out, no costs or expenses of administration including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330 and 331, or otherwise, that have been or may be incurred in this Case or in any Successor Case, and no priority claims to the Collateral are, or will be, senior to, prior to, or on parity with the Superpriority Claim.

(c)    Adequate Protection Payments.  The Agent and the Lenders shall receive adequate protection payments (the "**Adequate Protection Payments**") as follows: (i) in the amount of interest, which interest shall accrue at the rate applicable to loans under the Pre-Petition Credit Facility as of the Petition Date, (ii) in the amount of all fees and expenses, (including, without limitation, reasonable, documented legal, accounting, collateral examination, audit, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses) of the Agent and the Lenders in accordance with the Secured Credit Agreement, which payments shall not be subject to allowance by the Bankruptcy Court; and (iii) the Debtor shall pay to the Agent the Repayment Installments as described in paragraph 6 below.   The Repayment Installments shall be applied on account of the Senior Obligations and shall reduce such Senior Obligations until indefeasibly paid in full in cash (subject to paragraph 6 and the rights of the Creditors' Committee set forth in paragraph 12).

(d)    Pre-Petition Indemnity Account.    The Debtor shall establish an account in the control of the Agent (the "**Pre-Petition Indemnity Account**"), into which, upon the earlier of (1) the first occurrence of an Event of Default (as defined below) or (2)  the receipt of funds in

accordance with paragraph 7(e), $250,000 of the Transaction Consideration (as defined in the Purchase Agreement) shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtor in favor of the Agent or the Lenders under the Secured Credit Agreement (the "**Pre-Petition Indemnity Senior Obligations**"); *provided, however*, that the Pre-Petition Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debenture Holder upon the occurrence of either: (a) the date of Agent's receipt of both (i) a certification from the Creditors' Committee certifying to the Agent that the Creditors' Committee will not commence any challenge to the Senior Obligations or the Senior Liens pursuant to paragraph 12 hereof and (ii) a certification from the Debenture Holder certifying that it will not commence any claim or cause of action against the Agent or Lenders; or (b) to the extent the Agent has not received certifications under (a)(i) and (ii), entry of a final non-appealable order of a court of competent jurisdiction determining that neither the Creditors' Committee nor the Debenture Holder has any claim or cause of action against the Agent or Lenders. The Pre-Petition Indemnity Senior Obligations shall be secured by a first priority lien on the Pre-Petition Indemnity Account which shall be pari passu with the Senior Replacement Liens and shall be subject only to the Carve Out and the Prior Liens.

4.    <u>Adequate Protection of Debenture Holder</u>.  As adequate protection of the interests of the Debenture Holder in the Pre-Petition Collateral against any diminution in the value of its interests in the Pre-Petition Collateral as a result of the granting of the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Collateral, the subordination of the Debenture Junior Liens and the Debenture Replacement Liens on the Purchased Assets, subordination to the Carve Out, or the imposition of the automatic stay, the Debenture Holder is hereby granted on a final basis, pursuant to sections 361 and 363(e) of the Bankruptcy Code, additional and replacement

continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens (the "**Debenture Replacement Liens**") on the Collateral.  The Debenture Replacement Liens shall be subject and subordinate to the Senior Liens, the Senior Replacement Liens, the Carve Out, the Prior Liens and, subject to the conditions set forth in paragraph 8, the Purchase Agreement Liens and shall otherwise be senior and prior to all other interests or liens whatsoever in or on the Collateral.

5.      Priority of Replacement Liens Generally.    (1) the Senior Replacement Liens shall be subject and subordinate only to the Carve Out, the Senior Liens, the Prior Liens and, subject to the conditions set forth in paragraphs 8 and 9, the Purchase Agreement Liens, and shall be senior in all respects to the Debenture Replacement Liens, the Debenture Junior Liens and any and all other interests and liens whatsoever in or on the Collateral; and (2) the Debenture Replacement Liens shall be subject and subordinate to the Carve Out, the Senior Liens, the Senior Replacement Liens, the Prior Liens and, subject to the conditions set forth in paragraphs 8 and 9, the Purchase Agreement Liens, and shall be senior in all respects to and all other interests and liens whatsoever in or on the Collateral.

6.      Repayment from Proceeds of Purchase Agreement.    Proceeds of the Transaction Consideration shall be paid to the Agent as follows (collectively, the "**Repayment Installments**"):

(a)      No later than the earlier of (i) one (1) business day following the Debtor's receipt of the First Payment Amount (as defined in the Purchase Agreement and when required to be paid under the Purchase Agreement) (the receipt of which is hereby acknowledged by the Debtor) or (ii) December 7, 2007, an amount sufficient to indefeasibly repay in full in cash or cash collateralize in the manner described in the Secured Credit Agreement ninety percent (90%)

18

of the Senior Obligations (the receipt of which is hereby acknowledged by the Agent);

(b)     No later than the earlier of (i) one (1) business day following the Debtor's receipt of the Second Payment Amount (as defined in the Purchase Agreement and when required to be paid under the Purchase Agreement) and (ii) December 31, 2007, an amount sufficient to indefeasibly repay in full in cash or cash collateralize in the manner described in the Secured Credit Agreement all remaining Senior Obligations (the receipt of which is hereby acknowledged by the Agent).

The Repayment Installments shall be subject to disgorgement or reapplication in the event a challenge pursuant to paragraph 12 hereof with respect to the validity, perfection, extent or priority of the Senior Obligations or the Senior Liens has been sustained, after notice and a hearing, pursuant to an order of this Court or any other court of competent jurisdiction to hear appeals therefrom, and such order has become final and non-appealable.

7.     <u>Application of Payments</u>.  (a)  In addition, as a further accommodation to the Debtor, the Agent hereby agrees to deviate from the order of the application of payments on Senior Obligations set forth in the Secured Credit Agreement and hereby agrees that all payments and proceeds of Collateral, including without limitation, the Transaction Consideration, shall be applied in the following manner:

(i)     <u>First,</u> to principal and accrued interest on all outstanding Revolving Credit Advances and the Term Loan;

(ii)     <u>Second</u>, to provide cash collateral for Letter of Credit Obligations in the manner described in the Secured Credit Agreement;

(iii)     <u>Third</u>, to Fees and expenses reimbursable under the Secured Credit Agreement;

(iv)     <u>Fourth</u>, to all other Senior Obligations other than (i) Pre-Petition Indemnity Senior

Obligations and (ii) the $850,000 early termination fee component of the Senior Obligations (the

"**Assigned Repayment Amount**");

    (v)      Fifth, to the Pre-Petition Indemnity Senior Obligations as set forth herein;

    (vi)      Sixth, on account of the Assigned Repayment Amount.

The Agent hereby agrees that to the extent, and solely to the extent, there are sufficient funds

available on account of the Assigned Repayment Amount that, on behalf of the Agent, the

Debtor shall pay $500,000 of the Assigned Repayment Amount directly to a trust account

established for the benefit of general unsecured creditors (the "**GUC Trust**") and $350,000 of

the Assigned Repayment Amount directly to the Debenture Holder, and the Agent and the

Lenders hereby assign, without warranty or representation or recourse, to the GUC Trust and the

Debenture Holder, the Agent's and the Lenders' rights to the payment of the Assigned

Repayment Amount (to be shared by the GUC Trust and the Debenture Holder as provided in

paragraph 20 of this Final Order); provided however that, the Agent's and the Lenders'

agreement to assign the Assigned Repayment Amount to the GUC Trust and the Debenture

Holder shall in no way be construed as an agreement or an obligation for the direct payment or

funding of such Assigned Repayment Amount or to guarantee that the Debtor has sufficient

funds to pay such compensation or reimbursement.  The Agent further agrees that upon the

payment in full in cash or cash collateralization of the obligations described in subsection (a)(i),

(ii), (iii), (iv) and (v) of this paragraph 7, the Agent shall be deemed to have discharged and

released the Senior Replacement Liens including, specifically, with respect to the Assigned

Repayment Amount.

    (b)      To the extent that the Debtor fails to pay any amounts due by it pursuant to the

Purchase Agreement, including without limitation, pursuant to the Purchase Agent's rights under

sections 3.7(c) and 7.3(c) of the Purchase Agreement, and the Agent or the Lenders are obligated

to reimburse any amounts received by them pursuant to paragraph 7 hereof, the GUC Trustee

(defined below) and the Debenture Holder shall reimburse the Agent and the Lenders for any

amounts received by the Agent or the Lenders pursuant to paragraph 7 hereof and actually

reimbursed by the Agent or the Lenders (the "**Reinstatement Rights**"); it being understood and

agreed by the Creditors' Committee for itself and on behalf of the GUC Trust and its

beneficiaries, successors and assigns, and by the Debenture Holder, that as between the GUC

Trust and the Debenture Holder (and not in limitation of the Agent's or Lenders' Reinstatement

Rights), their respective share of any amount reimbursed to the Agent or the Lenders pursuant to

the Reinstatement Rights shall be on a pro rata basis in proportion to the amount of the payments

actually received by the GUC Trust and the Debenture Holder under paragraph 20 hereof.  The

obligations and liability of the Debtor under the Secured Credit Agreement and this Final Order

and the liens securing those obligations and liabilities shall be reinstated with full force and

effect or in such amount as is refunded, if at any time on or after the repayment in full in cash of

the Senior Obligations such repayment is voided, rescinded or refunded for any reason including,

without limitation, reversal, modification or vacatur of this Final Order all as though such

payment had not been made, provided however such reinstated liens shall not attach to the

Purchased Assets that constituted Pre-Petition Collateral.  The obligations and liability of the

Debtor under the Secured Debenture and this Final Order and the liens securing those obligations

and liabilities shall be reinstated with full force and effect or in such amount as is refunded, if at

any time on or after the repayment in full in cash of the Debenture Junior Obligations such

repayment is voided, rescinded or refunded for any reason including, without limitation, reversal,

modification or vacatur of this Final Order all as though such payment had not been made,

provided however such reinstated liens shall not attach to the Purchased Assets that constituted Pre-Petition Collateral.  Any such reinstated claims or liens shall continue to be subject to the Subordination Agreement.

8.      <u>Subordination of Lien on Purchased Assets</u>.      Upon the Purchase Agent's compliance with the provisions of the Purchase Agreement, each of the Pre-Petition Liens, Senior Replacement Liens and Debenture Replacement Liens, in each case, in the assets and property of the Borrower subject to the Purchase Agreement (the **Purchased Assets**") shall be subordinate to the liens and security interest granted to the Purchase Agent under the Purchase Agreement on the Purchased Assets (the "**Purchase Agreement Liens**"),  to the extent and solely to the extent, of that portion of the Transaction Consideration and Expenses actually paid by the Purchase Agent under the Purchase Agreement and the Pre-Petition Liens, Senior Replacement Liens and Debenture Replacement Liens shall otherwise remain senior to the extent of the unpaid portion of the Transaction Consideration and Expenses; <u>provided</u> that the Pre-Petition Liens, Senior Replacement Liens and Debenture Replacement Liens shall attach to all of the Transaction Consideration, any other amounts paid or payable to the Debtor under the Purchase Agreement and to any and all rights of the Debtor under the Purchase Agreement as set forth in paragraph 9 hereof.

9.      <u>Priority of Liens on Transaction Consideration</u>.      In accordance with the Subordination Agreement, the Debenture Junior Liens on the Transaction Consideration are expressly subordinate to the Senior Liens on the Transaction Consideration.    The Senior Replacement Liens on the Transaction Consideration shall be subject and subordinate only to the Carve Out, the Senior Liens and the Prior Liens and shall be senior in all respects to the Debenture Replacement Liens, the Debenture Junior Liens and any and all other interest and

liens whatsoever in or on the Collateral.  The Debenture Replacement Liens on the Transaction Consideration shall be subject and subordinate to the Carve Out, the Senior Liens, the Senior Replacement Liens, and the Prior Liens and shall be senior in all respects to and all other interests and liens whatsoever in or on the Collateral.

10.    <u>Post-Petition Lien Perfection</u>.    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Senior Replacement Liens and the Debenture Replacement Liens without the necessity of filing or recording any financing statement or other instrument or document (including, without limitation any mortgages or any lien perfection documents with respect to the proceeds of the Debtor's leaseholds), or the taking of any other action whatsoever which may otherwise be required under the law of any jurisdiction to validate or perfect the Senior Replacement Liens or the Debenture Replacement Liens or to entitle the Agent, the Lenders, or the Debenture Holder to the protections and priorities granted herein.  Notwithstanding the foregoing, the Agent and Debenture Holder may, each in its sole discretion, file such financing statements, mortgages, documents perfecting liens on the proceeds of the Debtor's leaseholds, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, lien perfection documents with respect to the proceeds of the Debtor's leaseholds, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of these Case.  The Debtor shall execute and deliver to the Agent or the Debenture Holder, as applicable, all such financing statements, mortgages, lien perfection documents with respect to the proceeds of the Debtor's leaseholds, notices and other documents as the Agent, any of the Lenders, or the Debenture Holder may reasonably request to evidence, confirm, validate or perfect, or to insure

the contemplated priority of, the Senior Replacement Liens and Debenture Replacement Liens granted pursuant hereto.   The Prepetition Agent and Debenture Holder, each in its sole discretion, may file a copy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor have real or personal property, and in such event, the subject filing or recording officer shall file or record such copy of this Final Order.

11.    <u>Modification of Automatic Stay</u>.   The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to (i) permit the Debtor to grant the Senior Replacement Liens, the Debenture Replacement Liens and the Superpriority Claim and to perform such acts as the Agent may request in accordance with paragraph 10 above and (ii) authorize the Agent to retain and apply the Adequate Protection Payments hereunder.

12.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    With the exception of the Committee Stipulations, which the Creditors Committee shall not challenge, nothing in this Final Order shall prejudice the rights of the Creditors' Committee to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Agent, and the Lenders in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or size of the Senior Obligations; *provided however,* that the Creditors' Committee hereby affirms the Committee's Stipulation in paragraph F and agrees that (x) as of the Petition Date, the value of the Pre-Petition Collateral exceeded the amount of the Senior Obligations, and accordingly the Creditors' Committee consents to the allowance of the Senior Obligations as fully secured claims within the meaning of section 506 of the Bankruptcy Code, and (y) that the Debtor and its estate have no offsets, defenses, claims, objections,

challenges, causes of action, and/or choses in action, including without limitation claims under chapter 5 of the Bankruptcy Code, against the Agent, the Lenders and the Debenture Holder, and/or their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees, subject only to the Creditors' Committee rights of investigation as to the Agent and the Lenders set forth in clauses (i) and (ii) of this subparagraph (a).   However, unless the Creditors' Committee commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Agent and/or the Lenders, in the nature of a setoff, counterclaim or defense to the Senior Obligations (including but not limited to, those under sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Agent or the Lenders) within 60 days following the retention (the **"Retention Date"**) of counsel by the Creditors' Committee (the **"Challenge Period"**, and the date that is the next calendar day after the termination of the Challenge Period, in the event that no contested matter or adversary proceeding is commenced during the Challenge Period shall be referred to as the **"Challenge Period Termination Date"**), then, upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any official creditors' committee(s) and any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case) shall be deemed to be forever waived, barred and discharged and the Debtor's Stipulations shall be binding on all creditors, interest holders and parties in interest in the Case or any Successor Case, and upon the Challenge Termination Period the Senior Obligations shall be deemed to be fully and finally allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with these Case and any Successor Case.    Only those parties in interest with requisite standing (including, without limitation, the Creditors' Committee) that have properly initiated an

adversary proceeding or contested matter challenging the Senior Liens or the Senior Obligations prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary proceeding. For the avoidance of doubt, prior to the expiration of the Challenge Period, as it may be extended as provided for herein, the Creditors' Committee is hereby authorized to commence any action with respect to the matters specified in this paragraph 12 without any further order of this Court or the need of any further application or motion by the Creditors' Committee, including, without limitation, any requirement that the Creditors' Committee file any motion seeking standing to prosecute any of the claims described in this paragraph 12, on behalf of the Debtor or otherwise. Nothing contained herein shall limit the rights of parties in interest under section 1109 of the Bankruptcy Code nor shall it limit the right of a party in interest to seek to intervene in the proceedings pursuant to applicable law, provided however that any such intervenor shall not be deemed to be the holder of the claim or cause or action nor have the ability to settle or compromise such claim or cause of action. The Challenge Period may only be extended for one additional 60-day period, for cause shown on motion brought prior to its expiration.

(b) With respect to the Debenture Holder and the Debenture Holder's claims and liens, the Debtor's Stipulations and the Committee's Stipulations shall immediately be binding on all creditors, interest holders and parties in interest in the Case or any Successor Case. The Debenture Holder is hereby allowed in the Case and any Successor Case a claim in the principal amount of $22,000,000.00, plus interest, if applicable in accordance with section 506(b) of the Bankruptcy Code and the value of the Allowed Debenture Holder Claim Collateral (as defined herein), at the rate provided in the Secured Debenture, accrued and accruing before and after the Petition Date, plus fees and expenses as provided in the Debenture Documents, whether incurred

26

before or after the Petition Date (the "**Allowed Debenture Holder Claim**").    In addition, the

Debenture Holder retains the right to request allowance of an additional principal amount in

excess of $22,000,000.00, and the Debtor, the Creditors' Committee and any other party in

interest retain the right to oppose such request.    The Allowed Debenture Holder Claim shall be

secured by a valid, perfected and enforceable lien on and security interest in the Pre-Petition

Collateral and all proceeds thereof, junior to the liens and security interests of the Agent and the

Lenders in accordance with the Subordination Agreement and this Final Order and junior to the

liens and security interests of the Purchase Agent in the Purchased Assets, to the extent set forth

in paragraph 8 hereof, and by a first priority perfected lien on and security interest in the Insider

Claims (as defined herein), and, subject to the Reinstatement Rights set forth in paragraph 7

above, the amounts to which the Debenture Holder is entitled under paragraph 20 hereof

(collectively, the "**Allowed Debenture Holder Claim Collateral**").    The Allowed Debenture

Holder Claim shall be an allowed secured claim under section 506(a) of the Bankruptcy Code to

the extent of the value of the Allowed Debenture Holder Claim Collateral in excess of the

amount of the Senior Obligations.    Solely for purposes of determining the Debenture Holder's

share of any Net Committee Avoidance Action Proceeds (as defined herein) pursuant to

paragraph 20(b) hereof, the Debenture Holder's share shall be calculated based upon an amount

equal to the difference between the Allowed Debenture Holder Claim and the amount of the

allowed secured claim of the Debenture Holder.    The Debenture Holder shall be entitled to

distributions under this Final Order only on account of (i) its lien, security interest or other

interest in the Allowed Debenture Holder Claim Collateral (including, without limitation the

amounts to which the Debenture Holder is entitled under paragraph 20 hereof, subject to the

Reinstatement Rights set forth in paragraph 7 above), and (ii) its share of any Net Committee

Avoidance Action Proceeds, and not otherwise on account of the Debenture Holder's unsecured claim; provided however that the Debenture Holder may assert an unsecured claim defensively for any purpose.

(c)     As of the entry of this Final Order, the Debtor, the Creditors' Committee, each in their own right and on behalf of the Debtor's estate, and each and every other party in interest in the Case and any Successor Case, including any chapter 11 or chapter 7 trustee appointed herein or therein, and all of their respective successors, assigns, subsidiaries and affiliates, and any person acting for and on behalf of, or claiming through any of them, shall be deemed to have fully, finally and forever waived, released and discharged the Debenture Holder and all of the Debenture Holder's past and present officers, directors, servants, agents, attorneys, assigns, parents, subsidiaries, and each person acting for or on behalf of the Debenture Holder (collectively, the "**Debenture Holder Released Parties**") of and from any and all past, present and future actions, causes of action, demands, suits, claims, liabilities, liens, lawsuits, costs, damages, debts, disbursements, expenses, losses and other obligations (collectively, "**Claims**") that could have been asserted by, through or on behalf of the Debtor's estate but not Claims that any such party in interest (other than the Debtor and the Creditors' Committee) may have in its individual capacity (collectively the released Claims are, "**Debenture Holder Released Claims**") of any kind or nature whatsoever, whether in law, equity or otherwise (including, without limitation, (a) those arising under chapter 5 of the Bankruptcy Code, and (b) any request for recovery from collateral of the Debenture Holder under section 506(c) of the Bankruptcy Code or otherwise), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, whether existing or accrued as of or at any time prior to the entry of this Final Order, against any of the

Debenture Holder Released Parties, whether held in a personal or representative capacity, and which are based on any act, fact, event or omission or other matter, cause or thing whatsoever, occurring at or from any time prior to and including the date of entry of this Final Order, but subject to the Reinstatement Rights set forth in paragraph 7 above, relating in any way, directly or indirectly, arising out of, connected with or relating to the Case, the Debenture Documents and the Subordination Agreement and the transactions contemplated thereby, all other agreements, certificates, instruments and other documents and statements (whether written or oral) related to any of the foregoing, and, without limiting the scope of the foregoing waiver, release and discharge in any way, such waiver, release and discharge of Debenture Holder Released Claims relating to the Case shall include, without limitation, any objection to, complaint or other request for equitable or other subordination (whether pursuant to section 510(c) of Bankruptcy Code or otherwise) of, or request for reconsideration (whether pursuant to section 502(j) of the Bankruptcy Code, Rule 3008 of the Federal Rules of Bankruptcy Procedure or otherwise) of, the Allowed Debenture Holder Claim.  For the avoidance of doubt, nothing contained herein shall operate as a release, waiver, impairment, or compromise of any claim, defense, cause of action, or any other right whatsoever of the Agent or the Lenders, all of which are expressly reserved, or of any claim, defense, cause of action, or any other right whatsoever that the Purchase Agent may have by reason of the Asset Purchase and License Agreement dated December 11, 2007 by and between YA IP Holdings, LLC and a joint venture formed by the entities named therein or the Intellectual Property Assignment Agreement dated December 11, 2007 by and between YA IP Holdings, LLC and a joint venture formed by the entities named therein.

13.    <u>Carve Out</u>.    Subject to the terms and conditions contained in this paragraph 13, the Senior Liens, the Senior Replacement Liens, the Debenture Junior Liens and the Debenture Replacement Liens are subordinate only to the following (the "**Carve Out**"):    (a) allowed administrative expenses pursuant to 28 U.S.C. Section 1930 (a)(6); (b) the lesser of (i) (X) all allowed reasonable fees and expenses of attorneys, consultants and financial advisors (the '**Case Professionals**") employed by the Debtor and the Creditors' Committee pursuant to sections 327, 363 and 1103 of the Bankruptcy Code plus (Y) the reasonable expenses of members of the Creditors' Committee, and (ii) $1.5 million, (c) amounts actually received by the Debtor after November 4, 2007 as "Prepayments" (as such term is defined in  the Motion of the Debtor for an Order (I) Authorizing the Debtor to Honor or Pay Certain Prepetition Obligations to its Customers in the Ordinary Course of Business and (II) Granting Certain Related Relief) in the ordinary course of business and consistent with past practices to the extent that such Prepayments have not been applied to satisfy the purchase price of goods delivered to the customer or otherwise returned or credited to the customer (the "**Customer Deposit Carve Out**") and (d) the costs, fees and expenses of a trustee appointed under chapter 7 of the Bankruptcy Code, in an amount not to exceed $50,000.  The obligations provided for under the Carve Out shall be added to and made a part of the Senior Obligations and the Superpriority Claim, secured  by the Senior Liens and the Senior Replacement Liens and shall be entitled to all of the rights, claims, liens, priorities and protections under this Final Order, the Secured Credit Agreement, the Bankruptcy Code and/or other applicable law in connection therewith.   No portion of the Carve Out may be used to litigate, object, contest or challenge in any manner or raise any defenses to the debt or collateral position of the Agent or the Lenders under the Secured Credit Agreement, or the Debenture Holder under the Secured Debenture, the Security

Agreement and all other documents and instruments executed in connection therewith (collectively, the "**Debenture Documents**"), whether by challenging the validity, extent, amount, perfection, priority or enforceability of such respective indebtedness under the Secured Credit Agreement or the Debenture Documents, or the validity, perfection or priority of any mortgage, security interest or lien with respect thereto or any other rights or interests or replacement liens with respect thereto or any other rights or interests of the Agent, the Lenders or the Debenture Holder, or by seeking to subordinate or recharacterize the Secured Credit Agreement, the Senior Obligations, the Debenture Documents or the Debenture Junior Obligations, or disallow any claim, mortgage, security interest, lien, or replacement lien or by asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Agent, the Lenders or the Debenture Holder, or any of their respective officers, directors, agents or employees; provided however, that the Carve Out may be used to fund the Creditors' Committee's investigation (as opposed to challenge) of the matters described in subsection (a)(i) and (ii) of paragraph 12 hereof.   The Carve Out may be used to fund the Creditors' Committee's prosecution of the Debtor's remaining chapter 5 causes of action and shall not be used in connection with (i) preventing, hindering or delaying the Lenders' or the Agent's (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder's) enforcement or realization upon the Collateral once an Event of Default has occurred, except to contest that an Event of Default has occurred, (ii) using or seeking to use Cash Collateral other than in accordance with the Cash Collateral Budget or selling or otherwise disposing of the Collateral without the consent of the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture

Holder), (iii) using or seeking to use any insurance proceeds related to the Collateral without the consent of the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder); or (iv) obtaining credit or incurring debt secured by a lien senior to or pari passu with the Senior Liens or Senior Replacement Liens (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Junior Liens or the Debenture Replacement Liens).    On the date the Repayment Installment described in paragraph 6(a) is remitted to the Agent, an amount sufficient to fund the Carve Out shall be placed in the Debtor's segregated depository account established for such purpose (the **"Carve Out Account"**).    Notwithstanding anything herein to the contrary, the funding of the Carve Out Account shall constitute the complete and final release, discharge and satisfaction of the Agent and Lender's obligations with respect to the Carve Out.    The Lenders and the Agent shall not be responsible for the direct payment or reimbursement or funding of the Carve Out or any Prepayments or fees or disbursements of any Case Professionals incurred in connection with the Case or any Successor Case, and nothing in this Final Order or otherwise shall be construed to obligate the Lenders or the Agent in any way to refund any Prepayment or to pay compensation to or to reimburse expenses of any professional, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

14.    <u>Payment of Compensation</u>.    Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtor, any committee or of any person or shall affect the right of the Agent, the Lenders or the Debenture Holder to object to the allowance and payment of such fees and expenses.

15.    <u>Sections 506 (c) and 552(b)</u>.  Without the prior written consent of the Agent and the Lenders, or the Debenture Holder, whichever is applicable, other than the Agreed 506(c) Claims as described below, which consent shall not be implied from any action, inaction, or acquiescence by the Agent or the Lenders, or the Debenture Holder, whichever is applicable, no costs or expenses of administration that have been or may be incurred in the Case at any time shall be charged against the Agent, the Lenders or the Debenture Holder, or their claims pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise nor shall such costs or expenses be charged against the Collateral or the Pre-Petition Collateral until and unless all Senior Obligations and Debenture Junior Obligations have been indefeasibly paid in full and in cash, other than the Agreed 506(c) Claims as described below.  As a compromise of the Creditors' Committee's objections to the entry of the Cash Collateral Order and the Sale Order and as a further accommodation to the Debtor and to promote a consensual resolution of the sale transactions under the Purchase Agreement, the Agent, the Lenders and the Debenture Holder hereby agree to a charge against the Pre-Petition Collateral of those expenses and in the amounts identified under the Heading "Agreed 506(c) Claims" on the Allocation of Proceeds and Disbursements Related to Personal Property and Leases  attached as Exhibit 2 to the Affidavit of Robert J. Duffy dated December 2, 2007 (Doc. #288) and attached hereto as Exhibit A (the "**Allocation Schedule**") (the "**Agreed 506(c) Claims**").    The Debtor and the Creditors' Committee hereby agree that notwithstanding the charge against the Pre-Petition Collateral with respect to the Agreed 506(c) Claims, as of the Petition Date, the value of the Pre-Petition Collateral exceeded the amount of the Senior Obligations, and accordingly the Creditors' Committee consents to the allowance of the Senior Obligations as fully secured claims within the meaning of section 506 of the Bankruptcy Code and the Debtor and the Creditors' Committee

hereby waive any rights to seek to charge any costs or expense of administration that have been incurred in the Case at any time against the Agent, the Lenders or the Debenture Holder or their claims pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise nor shall such costs or expense be charged against the Collateral or the Pre-Petition Collateral until and unless all Senior Obligations and Debenture Junior Obligations have been indefeasibly paid in full in cash. The Agent, the Lenders and the Debenture Holder shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Agent, the Lenders or the Debenture Holder with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the Collateral.

16.    No Marshaling.    The Agent, the Lenders and the Debenture Holder shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Collateral.

17.    Insider Claims Transferred to Debenture Holder.    Any and all claims, causes of action and choses in action, of every nature and kind, including without limitation under chapter 5 of the Bankruptcy Code, of the Debtor and its estate against its present and former officers, directors, employees, shareholders, affiliates and insiders (as defined in section 101(31) of the Bankruptcy Code) (collectively, the "**Estate Insider Claims**") shall be sold, transferred and conveyed to the Debenture Holder. Except as provided for below, the Debtor and its estate shall not retain any interest in or rights with respect to the Estate Insider Claims or any proceeds thereof. The Debenture Holder shall have absolute and unfettered control and power, in its sole and absolute discretion, to prosecute, compromise, settle and/or otherwise deal with the Estate Insider Claims. The Debtor and any estate representative in the Case or any Successor Case,

and their respective officers, directors, employees, advisors and other agents, shall (a) preserve, and provide the Debenture Holder with access (at reasonable times and places) to, any and all information, records, "documents" and "electronically stored information" (which terms shall be synonymous in meaning and equal in scope to the usage of such terms in Federal Rule of Civil Procedure 34(a)) relating in any way to the Estate Insider Claims and any and all matters and transactions related thereto, and (b) cooperate in making available to the Debenture Holder (reasonably promptly upon the Debenture Holder's request and at reasonable times and places), all of their respective officers, directors, employees, advisors and other agents for interviews, examinations or depositions by the Debenture Holder concerning the Estate Insider Claims and any and all matters and transactions related thereto.   In the event that the Debenture Holder actually receives, through litigation, compromise and/or settlement, cash proceeds, after netting out all fees, costs and expenses of litigation (including, without limitation,  attorneys' fees and expenses, expert witness fees and expenses and other professional fees and expenses) (such net sum being referred to as "**Net Proceeds**"), in respect of (a) any Estate Insider Claims or (b) any claims, causes of action and choses in action of the Debenture Holder against any of the Debtor's present and former officers, directors, employees, shareholders, affiliates and insiders (as defined in section 101(31) of the Bankruptcy Code) (collectively, the "**Debenture Holder Insider Claims**"), the Debenture Holder shall pay to the GUC Trust (the "**GUC Trust**'s **Estate Insider Claim Share**") (i) five percent (5%) of any such Net Proceeds less than or equal to $5,000,000 and (ii) ten percent (10%) of any such Net Proceeds in excess of $5,000,000.   Except  for its limited right to receive the GUC Trust's Estate Insider Claim Share, neither the GUC Trust nor the Creditors' Committee shall have any right to participate in, join as a party, or otherwise have any involvement in any aspect of the litigation and/or compromise or settlement of the Estate

Insider Claims or the Debenture Holder Insider Claims.  In the event that there are any Net Proceeds of the Estate Insider Claims remaining after payment in full of (x) the Allowed Debenture Holder Claim, (y) the GUC Trust's Estate Insider Claim Share, and (z) reimbursement to the Debenture Holder for the amount of the GUC Trust's Estate Insider Claim Share, such remaining Net Proceeds shall be shared by the Debenture Holder and the Debtor on a 50-50 basis.

18.    <u>Retention of Claims of the Agent, the Lenders and the Debenture Holder</u>. Notwithstanding anything else contained in this Final Order or the Sale Order, nothing contained in this Final Order or the Sale Order shall impact in any way (including, without limitation, the compromises and settlements approved herein) the claims, causes of action and choses in action of any of the Agent, the Lenders or the Debenture Holder against any and all non-Debtor parties and entities, including, without limitation, the Debtor's present and former officers, directors, employees, shareholders, affiliates and insiders (as defined in section 101(31) of the Bankruptcy Code), the Agent, the Lenders, the Debenture Holder, and all other holders of claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtor and all holders of equity securities (as defined in section 101(16) of the Bankruptcy Code) of the Debtor.  All of such claims, causes of action and choses in action of each of the Agent, the Lenders and the Debenture Holder are expressly reserved and retained by each of them.  Nothing contained in this Final Order is intended to modify or waive any of the rights and obligations of each of the Agent, Lenders and Debenture Holder under the Subordination Agreement.

19.    <u>Transfer of Certain Chapter 5 Causes of Action to Creditors' Committee</u>. All claims and causes of action of the Debtor under chapter 5 of the Bankruptcy Code, other than those included within the Estate Insider Claims and against the Debenture Holder and those that

may be asserted by the Debtor as a defense or offset against any claim against the Debtor's estate (the "**Committee Avoidance Actions**"), shall be sold, transferred and conveyed to the Creditors' Committee for the benefit of the GUC Trust.  The Creditor's Committee shall have absolute and unfettered control and power, in its sole and absolute discretion, to prosecute, compromise, settle and/or otherwise deal with the Committee Avoidance Actions.    The Debtor and any estate representative in the Case or any Successor Case, and their respective officers, directors, employees, advisors and other agents, shall (a) preserve, and provide the Creditors' Committee with access (at reasonable times and places) to, any and all information, records, "documents" and "electronically stored information" (which terms shall be synonymous in meaning and equal in scope to the usage of such terms in Federal Rule of Civil Procedure 34(a)) relating in any way to the Committee Avoidance Actions and any and all matters and transactions related thereto, and (b) cooperate in making available to the Creditors' Committee (reasonably promptly upon the Creditors' Committee's request and at reasonable times and places), all of their respective officers, directors, employees, advisors and other agents for interviews, examinations or depositions by the Creditors' Committee concerning the Committee Avoidance Actions and any and all matters and transactions related thereto.  In the event that the Creditors' Committee elects to prosecute any Committee Avoidance Actions, any recovery, after netting out all fees, costs and expenses of litigation (including, without limitation, attorneys' fees and expenses, expert witness fees and expenses and other professional fees and expenses), shall be contributed to the Distribution Fund to be shared amongst the GUC Trust and the Debenture Holder, as provided in paragraph 20 hereof.

20.     <u>Debenture Holder and GUC Trust Sharing</u>. (a)          Subject to the Reinstatement Rights set forth in paragraph 7 above, the Debenture Holder and the GUC Trust shall share in the following amounts as set forth in subsection (b):

(i)     the Assigned Repayment Amount;

(ii)    net proceeds, if any, of the Committee Avoidance Actions as provided in paragraph 19 hereof ("**Net Committee Avoidance Action Proceeds**");

(iii)   Net Proceeds, if any, of the Estate Insider Claims and the Debenture Holder Insider Claims;

(iv)    after payment in full of the Senior Obligations, with reference to the Allocation Schedule, the amount, if any, by which the actual "Total" proceeds and disbursements of the types identified in the "Personal Property" and "Leases" columns of the Allocation Schedule exceeds the actual "Total" allowed claims and expenses of the types identified in such "Personal Property" and "Leases" columns (the "**Excess Overall Proceeds**"); and

(v)     after payment in full of the Senior Obligations, the amount of the actual total proceeds collected from Purchase Agent attributable to personal property in excess of the estimated proceeds of $43 million identified on the Allocation Schedule (the "**Shared Proceeds**", together with all of the above amounts, the "**Distribution Funds**").

(b)     The Debtor shall pay any and all of the above Distribution Funds to the Debenture Holder and GUC Trust as follows:

(i) To the Debenture Holder, together with other consideration contained herein and in further satisfaction of the Allowed Debenture Holder Claim, (x) an amount not less than $1,285,000 including: (aa) $350,000 of the Assigned Repayment Amount and seventy-five percent (75%) of the Shared Proceeds (but not less than $935,000); (bb) one hundred percent (100%) of the amount, if any, of Excess Overall Proceeds; (y) one hundred percent (100%) of the Net Proceeds of Estate Insider Claims and Debenture Holder Insider Claims *minus* the GUC Trust's Estate Insider Claim Share; and (z) the Debenture Holder's pro rata share of any Net Committee Avoidance Action Proceeds; and

(ii) To the GUC Trust (x) twenty-five percent (25%) of the Shared Proceeds, including not less than $500,000 of the Assigned Repayment Amount; (y) the GUC Trust's Estate Insider Claim Share as provided in paragraph 17 hereof; and (z) one hundred percent (100%) of the amount of any Net Committee Avoidance Action Proceeds *minus* the Debenture Holder's pro rata share.

The GUC Trust shall be held by an individual or entity to be designated by the Creditors' Committee (or such other party designated by further order of this Court) (the "**GUC Trustee**") in a separate trust account (the "**GUC Trust Account**") free and clear of all liens, claims and encumbrances, but subject to the provisions of this Order and the further orders of the Court, with such funds to be disbursed from the GUC Trust Account for the benefit of general unsecured creditors in these proceedings, expressly excluding any claims of the Debenture Holder, in accordance with further orders of this Court.    The GUC Trust Account will be funded with the portion of the

Distribution Funds payable to the GUC Trust, as provided in this paragraph 20. The Parties hereby agree that the Debtor shall wire all Distribution Funds allocable to the Debenture Holder directly to the Debenture Holder and to the GUC Trust directly to the GUC Trust Account for the GUC Trust. Funds deposited in the GUC Trust shall be held in the GUC Trust Account in accordance with the provisions of this Order and disbursed pursuant to a subsequent order(s) of this Court. No funds shall be disbursed from the GUC Trust Account (other than reimbursement payments to the Agent and Lenders pursuant to paragraph 7 above) until such time as this Court shall issue an order, pursuant to a motion of the Creditors' Committee made on notice to the parties hereto, authorizing such disbursement and finding that the Purchase Agent has no remaining right to reimbursement of any amounts paid pursuant to Sections 3.7(c) and 7.3(c) of the Purchase Agreement.

21. <u>Survival</u>. The terms and provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order that may be entered (1) confirming a plan of reorganization in this Case, (2) converting this Case to a case under chapter 7 of the Bankruptcy Code, or (3) dismissing this Case or a Successor Case, and the terms and provisions of this Final Order shall continue in full force and effect notwithstanding the entry of such order and shall be enforceable in any Successor Case. The Senior Replacement Liens, Super-Priority Claims and Debenture Replacement Liens shall continue in these Case and in any such Successor Case and shall maintain their priority as provided herein until the Senior Obligations and the Debenture Junior Obligations have been indefeasibly paid in full in cash, notwithstanding the expiration of

the Specified Period or any earlier termination of the Debtor's authorization to use Cash Collateral.

22.    <u>Reservation of Rights to Seek Additional Adequate Protection</u>.    Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Agent, the Lenders (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder)  that the adequate protection granted herein does in fact adequately protect the Agent, the Lenders or the Debenture Holder, as applicable, against any diminution in value of their interests in the Pre-Petition Collateral (including the Cash Collateral) arising on account of the Debtor's use thereof during the Specified Period, and the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder) specifically has reserved its right to seek additional adequate protection on behalf of itself, and in the case of the Agent, on behalf of itself and the Lenders, without prejudice to any other person's ability to object to or otherwise oppose such additional adequate protection.

23.    <u>Debtor's Obligations</u>.    Until the expiration of the Specified Period or any earlier termination of the Debtor's authorization to use Cash Collateral hereunder, the Debtor shall:

a.    remit all Cash Collateral, as and when received, for deposit to a Concentration Account, and thereafter the Debtor may direct such Cash Collateral to be deposited into the Debtor's Disbursement Account (as such term is defined in the Secured Credit Agreement) and to be used in accordance with this Final Order;

b.    apply Cash Collateral and other sources of cash available to the Debtor hereunder to the expenses of the operation of its business as provided in the Cash Collateral Budget;

c.      deliver to the Agent and respective counsel to the Debenture Holder and the Creditors' Committee on or before 2:00 p.m. (Eastern Time) on Tuesday of each week (unless such day is not a Business Day, in which event the next succeeding Business Day) a (i) comparison for the prior week of actual results of all items contained in the Cash Collateral Budget to the amounts originally contained in the Cash Collateral Budget and a (ii) cumulative comparison for the period from the Petition Date through the end of the prior week of the actual results of all items contained in the Cash Collateral Budget to the amounts originally contained in the Cash Collateral Budget, in each case along with such supporting information as the Agent or the Debenture Holder may request;

d.      provide the Agent and respective counsel to the Debenture Holder and the Creditors' Committee with updated Cash Collateral Budgets as and when requested by the Agent or the Debenture Holder;

e.      serve the Agent and its counsel and respective counsel to the Debenture Holder and the Creditors' Committee with a copy of each monthly report filed by the Debtor in these cases as required by the Court, the United States Trustee or applicable law; and

f.      comply with the loan documentation comprising the Pre-Petition Credit Facility (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Documents) other than as modified herein or as prohibited by the Bankruptcy Code.

24.    <u>Insurance/Cash Management</u>.    Until the Senior Obligations and the Debenture Junior Obligations have been indefeasibly paid in full in cash, and notwithstanding the expiration of the Specified Period or any earlier termination of the Debtor's authorization to use Cash Collateral hereunder, the Debtor shall:

a.    insure Collateral in amounts and for the risks, and by the entities, as required under the Secured Credit Agreement and the Debenture Documents; and

b.    maintain the Concentration Accounts, the Disbursement Account and the cash management system in effect as of the Petition Date, as modified by any order acceptable in form and substance to the Agent and approved by this Court.

25.    <u>No Additional Waivers/Consents</u>.    Except as expressly provided for herein or by the Bankruptcy Code, nothing contained herein shall:

a.    constitute a waiver by the Agent, any Lender or the Debenture Holder of any rights which may exist under the Pre-Petition Credit Facility including, without limitation, (i) the right to exercise the rights and remedies of a secured party thereunder and under applicable law, or (ii) the right to seek additional adequate protection or to challenge any impairment of its respective claim or liens;

b.    constitute a waiver by the Agent or any Lender of the right (i) to seek to dismiss or convert this Case, (ii) to move for the appointment of a chapter 11 trustee or examiner (with or without expanded powers), or (iii) to seek relief from the automatic stay or to exercise any other rights which it or they may have under the Bankruptcy Code;

c.    affect in any way any rights and obligations among the Agent, the Lenders and the Debenture Holder;

d.    constitute consent by the Agent, any Lender or the Debenture Holder to the use of Cash Collateral other than as specifically provided herein; or

e.    obligate the Agent or any Lender to permit the use of Cash Collateral other than as specifically provided herein or to advance funds to the Debtor for any reason, including, without limitation, for the payment of expenses of administration under the

Bankruptcy Code.

26.    <u>Event of Default</u>.  The occurrence of any of the following events, unless waived in writing by the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), by the Debenture Holder), shall constitute an "**Event of Default**" hereunder:

a.    the failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order, including without limitation, payment of the Repayment Installments on the dates specified herein; or

b.    the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of the Agent and Lenders (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder), or (ii) entitled to priority administrative status which is equal or senior to that granted to the Agent and Lenders herein, in each case other than the obtaining of credit, if any, from the Purchase Agent, as evidenced by the Purchase Agreement; or

c.    the institution of any judicial proceeding (other than a challenge by the Creditors' Committee pursuant to paragraph 12) by or on behalf of any other person seeking to challenge the validity of any portion of the Secured Credit Agreement or the applicability or enforceability thereof or which seeks to void, avoid, limit, or otherwise adversely affect any security interest created by or in relation to the Secured Credit Agreement or any payment made pursuant thereto; or

d.    any lien or security interest purported to be created under the Secured

Credit Agreement shall cease to be, or shall be asserted by any Debtor not to be, a valid and

perfected lien on or security interest in any Collateral, with the priority required by the Secured

Credit Agreement, as modified by this Final Order; or

       e.       the entry of an order by the Bankruptcy Court granting relief from or

modifying the automatic stay of section 362 of the Bankruptcy Code (x) to allow any creditor to

execute upon or enforce a lien on or security interest in any Collateral, or (y) with respect to any

lien of or the granting of any lien on any Collateral to any state or local environmental or

regulatory agency or authority, which in either case would have a material adverse effect on the

business, operations, property, assets, or condition, financial or otherwise, of the Debtor; or

       f.       any of the Debtor's return of goods constituting Collateral pursuant to

section 546(h) of the Bankruptcy Code; or

       g.       reversal, vacatur or modification (without the express prior written consent

of the Agent, the Lenders and the Debenture Holder) of this Final Order; or

       h.       dismissal of the Debtor's chapter 11 Case or conversion of the Debtor's

chapter 11 Case to a chapter 7 case or the appointment of a chapter 11 trustee or examiner with

enlarged powers or other responsible person; or

       i.       any material misrepresentation of fact made after the Petition Date by any

of the Debtor or their agents to the Agent or the Lenders or to agents for the Agent or the

Lenders about the financial condition of the Debtor, or any of them, the nature, extent, location

or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

or

       j.       a default by any of the Debtor in reporting financial information as and

when required herein or under the Secured Credit Agreement, except as expressly modified

herein, and the continuance of such default uncured for a period one (1) business day following written notice by the Agent to the Debtor of such default; or

        k.       the sale of any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the Agent, except as provided in the Purchase Agreement; or

        l.       failure to comply with the loan documentation comprising the Secured Credit Agreement other than as otherwise modified herein or as prohibited by the Bankruptcy Code; or

        m.       Failure to comply with the Purchase Agreement and any of the documents or agreement executed in connection therewith or failure of the sale transactions under the Purchase Agreement to have been executed strictly in accordance with the terms of the Purchase Agreement or the occurrence of any action, event or circumstance that would adversely affect the Purchase Agreement or the Transaction Consideration to be received thereunder, or the occurrence of any action, event or circumstance that could cause a material reduction or negative adjustment to the Transaction Consideration, including without limitation as contemplated in Sections 3.5(a) and 7.3(c) of the Purchase Agreement; or

        n.       Failure by the Debtor to have paid the Debenture Holder not less than $1,285,000, by wire transfer of immediately available funds, not later than January 15, 2008.

        27.    <u>Remedies</u>.  Immediately upon the occurrence and during the continuation of an Event of Default and following the giving of five (5) business days' notice (the "**Remedies Notice Period**") to the Debtor, the Creditors' Committee, the Purchase Agent and the United States Trustee, the Agent shall be entitled to foreclose on all or any portion of the Collateral, collect accounts receivable and apply the proceeds thereof in satisfaction of the Senior

Obligations and in accordance with this Final Order, otherwise exercise remedies against the Collateral permitted by applicable nonbankruptcy law. During the Remedies Notice Period, the Debtor and/or the Creditors' Committee and/or the Purchase Agent shall be entitled to an emergency hearing with the Bankruptcy Court and, unless ordered otherwise prior to the expiration of the Remedies Notice Period, the automatic stay, as to the Lenders and the Agent, shall be automatically terminated at the end of the Remedies Notice Period and without further notice or order.  The Debenture Holder shall have such rights in the event of an Event of Default as the Court may determine after notice and a hearing, which hearing may be on an expedited basis.  In the event that the Debtor fails to timely pay the Debenture Holder or GUC Trust any amounts due to them hereunder, as applicable, the Debenture Holder and Creditors' Committee (on behalf of the GUC Trust) shall have such rights as the Court may determine after notice and a hearing, which hearing may be on an expedited basis.

28.    <u>Good Faith</u>.  The Agent, the Lenders and the Debenture Holder have acted in good faith in agreeing to the terms of this Final Order.  If any provision of this Final Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, to the extent of any diminution in the value of the Agent and Lenders' and Debenture Holder's respective interest in the Pre-Petition Collateral, such modification, vacatur, or stay shall not affect the validity, perfection, priority, or enforceability of the Replacement Liens or Super-Priority Claims granted by the Debtor herein.

29.    <u>Binding Effect</u>.  The provisions of this Final Order shall be binding on the Debtor, any Chapter 11 or Chapter 7 trustee appointed herein, all creditors of any of the Debtor and all other parties in interest in the Case or in any Successor Case.

30.    <u>No Waiver</u>.  The Agent's, any Lender's, the Debenture Holder's or the Creditors' Committee's failure to seek relief or otherwise exercise its rights and remedies under the Pre-Petition Credit Facility, the Debenture Documents or this Final Order, as applicable, shall not constitute a waiver of any of the Agent's, such Lender's, the Debenture Holder's or the Creditors' Committee's rights hereunder, thereunder, or otherwise.

31.    <u>No Modification or Stay of this Final Order</u>.  The Debtor irrevocably waives any right to seek any modification or extension of this Final Order without the prior written consent of the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder), and no such consent shall be implied by any other action, inaction or acquiescence of the Agent (or, after the payment or cash collateralization in full in cash of the obligations described in paragraph 7(a)(i), (ii), (iii), (iv) and (v), the Debenture Holder).

32.    <u>Immediate Effect</u>.  Pursuant to Bankruptcy Rule 6004(h), this Final Order shall become effective immediately.

33.    <u>Retention of Jurisdiction</u>.  The court has and will retain jurisdiction to enforce this

Final Order according to its terms.

Dated:  New York, New York
      _**January 7, 2008**_

                                        _**s/ Robert E. Gerber**_
                                        **UNITED STATES BANKRUPTCY JUDGE**

JONES DAY                                COOLEY GODWARD KRONISH LLP
Counsel to the Debtor                    Proposed Counsel to the Creditors' Committee

By: /s/ Richard H. Engman                    By: /s/ Jay R. Indyke
    Paul D. Leake, Esq.                          Jay R. Indyke, Esq.
    Richard H. Engman, Esq.,                     Cathy Hershcopf, Esq.
    222 E. 41st Street,                          1114 Avenue of the Americas
    New York, NY 10017                           New York, NY 11036
    Tel: (212) 326.3939                          Tel: (212) 479-6000

BINGHAM McCUTCHEN LLP                     SQUIRE, SANDERS & DEMPSEY L.L.P.
Counsel to the Agent and                 Counsel to YA Global Investments, L.P.
The Lenders.

By: /s/  Julia Frost-Davies                  By: /s/   Stephen D. Lerner
    Robert A. J. Barry, Esq.                     Stephen D. Lerner (SL 7598)
    Julia Frost-Davies, Esq.                     Jeffrey A. Marks (JM 3907)
    150 Federal Street,                          221 E. Fourth St., Suite 2900
    Boston, MA 02110                             Cincinnati, OH 45202
    Tel: (617) 951-8000                          Tel (513) 361-1200

    Anna M. Boelitz, Esq.                        350 Park Avenue
    One State St.                                New York, NY 10022
    Hartford, CT 06107                           Tel (212) 872-9800
    Tel: (860) 240-2700

2