UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------)
In re:                                                    )   Chapter 7
                                                          )
PLVTZ, Inc.,                                              )   Case No. 07-13532 (REG)
                                                          )
                    Debtor.                               )
                                                          )
---------------------------------------------------------)

BENCH DECISION[1] ON DISPUTE OVER TAXES CURE
AMOUNT (PROPERTY IN ELMHURST, NY)

APPEARANCES:

GOLUB & GOLUB, LLP
Counsel for MS Elmhurst LLC and CS Elmhurst LLC
225 Broadway
15th Floor
New York, NY 10007
By:   Remy J. Ferrario, Esq. (argued)

TOGUT, SEGAL & SEGAL, LLP
Counsel for Albert Togut, Chapter 7 Trustee
One Penn Plaza, Suite 3335
New York, New York 10119
By:   Neil Berger
      Lara R. Sheikh, Esq. (argued)

BEFORE:   ROBERT E. GERBER
          UNITED STATES BANKRUPTCY JUDGE

---

[1] I use bench decisions to lay out in writing decisions that are too long, or too important, to dictate in open court, but where the circumstances do not permit more leisurely drafting or more extensive or polished discussion. Because they often start as scripts for decisions to be dictated in open court, they typically have less in the way of citations and footnotes, and have a more conversational tone.

In the chapter 7 case of PLVTZ, Inc. (the "**Debtor**"), MS Elmhurst LLC and CS Elmhurst LLC (together, the "**Landlords**") move for an order directing PLVTZ to pay the cure amount relating to the previously approved assumption and assignment of PLVTZ's lease (the "**Lease**") for premises on Queens Boulevard in Elmhurst, New York. The Trustee for PLVTZ's chapter 7 estate (the "**Trustee**") opposes the Landlords' motion, by reason of his differences over the proper cure amount, whose determination is the underlying issue on this motion. While the Trustee acknowledges that some of the rent (totaling approximately $42,000) has not been paid, the Trustee and the Landlords differ over the extent, to which PLVTZ is entitled to credit for real estate taxes PLVTZ previously paid.

This matter isn't driven by issues of law; it's a matter of determining and analyzing the applicable facts. Doing so, I determine that while the proper application of payments PLVTZ made is confusing, to say the least, the Landlords are correct.

The Landlords seek to recover an undisputed shortfall amount, and also a disputed one, due under a cure payment owed to them by PLVTZ. A lease assignment order dated March 12, 2008 obligated PLVTZ to pay the Landlords any amount due and owing under the Elmhurst Lease, amounting to $160,553.37, of which $42,049.72 remains unpaid. The Landlords contend that PLVTZ, which failed to make rent payments to the Landlords in November 2007 and March 2008, is responsible for paying the remaining cure amount for PLVTZ's default in the month of March, up to the date of the assignment on March 12. The Trustee contends that while $42,049.72 remains unpaid, the Landlords were overpaid to the extent of $58,842.12 that had been paid by PLVTZ on account of the real estate taxes due as additional rent under the Lease,

which should be set off against the cure amount, and that any amount in excess should be repaid to the Trustee.

Although the evidence confirms that PLVTZ did prepay taxes applicable to the period after assignment, the evidence further confirms the Landlords' position that PLVTZ did not pay double taxes for any period under the Elmhurst Lease, and that the Trustee is therefore not entitled to any credit from the Landlords. Accordingly, the shortfall on the cure payment remains due and owing to the Landlords.

The requested order compelling and directing the payment of the cure amount is granted, though without prejudice to the Trustee's right to be heard for indemnification by another party for any prepaid taxes for which the estate has not yet enjoyed the benefit.[2] My Findings of Fact and Conclusions of Law in connection with this determination follow.

## Findings of Fact

*1. Procedural Background*

On September 1, 1983, PLVTZ's predecessors in interest entered into a lease agreement with the Landlords predecessors in interest on September 1, 1983 for premises located at 86-08 Queens Boulevard in Elmhurst, New York for a period of 21 years, which was subsequently modified into what is now the Elmhurst Lease (the "**Original Lease**"). Under paragraph six of the Original Lease, the tenant was supposed to pay real estate taxes directly to the relevant taxing

---

[2] I note, without finding, that PLVTZ may be entitled for indemnification from the assignee of the Elmhurst Lease. *See* Assumption Order ¶ 4 (the assignee "shall reimburse the Debtor for the pro rata amount of any real estate taxes… to the extent that such taxes or other amounts are attributable to any date on or after the Assumption Date."). It seems that PLVTZ paid—or cured defaulted payments for—all rent and additional rent through February 2008. Some of those payments may apply to a tax period during which PLVTZ is no longer in possession of the leased premises. However, I do not decide this matter now.

authority. PLVTZ's predecessor, Levitz Furniture, filed for bankruptcy and assumed and assigned the Elmhurst Lease to PLVTZ by order dated January 3, 2006.

On November 8, 2007, PLVTZ filed for relief under chapter 11 of the Bankruptcy Code. On October 27, 2008, PLVTZ's case was converted to a chapter 7 proceeding, with Albert Togut appointed as trustee (the "**Trustee**"). On March 12, 2008, PLVTZ assumed and assigned the Elmhurst Lease to Raymours Furniture Company ("**Raymours**").

2. *The Leases*

In the Original Lease, paragraph six states "the Lessee shall and will during the term aforesaid, at its own proper cost and charge, bear, pay and discharge all [ ] taxes."[3] Under the Original Lease, PLVTZ was required to pay real estate taxes for the leased premises directly to the City of New York.

On November 7, 2002, the Original Lease was modified by a Lease Modification Agreement. In the agreement, paragraph six of the Original Lease was replaced by a new paragraph. The new paragraph six required PLVTZ to pay real estate taxes directly to the Landlords. PLVTZ would pay one-twelfth of the year's estimated taxes each month as additional monthly rent to the Landlords. Because New York City taxes are paid in advance of the period during which they accrue, these payments would essentially comprise a sinking fund to accumulate six months' worth of future taxes to be paid by the Landlords to the taxing authority at the beginning of the following six month period.[4] By way of example, PLVTZ would pay additional rent starting in January and continuing each month. The Landlords would

---

[3]     Trustee's Obj. Exh. 1.

[4]     *See* Webber Decl. ¶ 12 ("New York City real estate taxes are billed in advance for a subsequent period….").

hold each monthly payment through June of that year and then pay the cumulative amount to the taxing authority for future taxes that would accrue in July through December of the same calendar year.

*3. The Tax Payments*

In December of 2002, PLVTZ paid $58,842.12 directly to New York City in compliance with the Original Lease. This lump sum payment paid for real estate taxes that would accrue over the next six months. That is, the December 2002 tax payment covered real estate taxes for the first six months (January through June) of 2003.[5]

In a letter dated December 17, 2002, the Landlords advised PLVTZ to add $9,807.02 to PLVTZ's monthly rent payments beginning in January of 2003 "to accumulate the necessary amount for the July 1, 2003 tax payment."[6] Beginning in January 2003, PLVTZ paid the additional monthly payments, except for the period between March 1 and March 12 of 2008—the period in dispute here. PLVTZ's additional monthly payments in January 2003 through June of 2003 accumulated in a sinking fund for the Landlords' July 1 tax payment for future taxes to be incurred during the second half of 2003. Therefore, the December 2002 tax payment and the additional monthly rent payments paid in the first half of 2003 applied to different periods. Thus, there was no double payment of taxes and the Landlords do not hold any funds in the form of a deposit from PLVTZ.

*4. Assumption and Assignment*

On November 19, 2007, PLVTZ filed its Notice of Filing of Cure Amount Schedule in

---

[5] *See* Webber Decl. ¶ 10 ("[P]ursuant to the Lease Modification Agreement, the Debtor added $9,807.02 to the monthly fixed rent payments, beginning on January 1, 2003, to accumulate the necessary amount due for the July 1, 2003 for the period June 1, 2003 through December 31, 2003.").

[6] Trustee's Obj. Exh. 4.

Connection With Proposed Sale of Substantially All of the Assets of PLVTZ (the "**Cure Notice**"). The Elmhurst Lease was included in a schedule of unexpired real property leases that PLVTZ wished to assume and assign. The Cure Notice stated that the amount due under the Elmhurst Lease, and the amount necessary to cure the default relating to non-payment of rent in November 2007, was $118,503.68. By order dated March 12, 2008 (the "**Assumption Order**"), PLVTZ assumed and assigned the Elmhurst Lease to Raymours. The Assumption Order provided that "all obligations arising under the Elmhurst Lease which is attributable to the period prior to the Assumption Date, including . . . the Cure Amount, shall be the obligation of the Debtor or the Agent. . . ."[7] and that "[i]n full satisfaction of the Debtor's obligation under section 365(b)(1) of the Bankruptcy Code to cure any existing defaults … the Debtor shall pay to the Landlord … the amount agreed to by the Elmhurst Landlord and PLVTZ on account of (a) the Debtor's defaults prior to the date hereof and (b) any and all postpetition amounts due and owing under the Elmhurst Lease from the date hereof through the Assumption Date. . . ."[8]

5. *Cure Payment and Shortfall*

On March 21, 2008, PLVTZ paid $118,503.68 in cure amounts on account of PLVTZ's defaults under the Elmhurst Lease, comprised of rent and additional rent payments that PLVTZ failed to pay in November of 2007. PLVTZ remained in possession of the leased premises through March 12, 2008 (the "**Assumption Date**"). PLVTZ did not pay rent or additional monthly payments due in connection with that period. PLVTZ therefore owes the pro rata amount of rent and additional monthly payments to the Landlords for March 1, 2008 through March 11, 2008. The pro rata amount is $42,049.72, comprised of $36,829.32 in rent and

---

[7] Assumption Order ¶ 4.
[8] Id. ¶ 20.

$5,220.40 in real estate tax payments due as additional rent under paragraph six of the Modified Lease.[9] Therefore, the correct cure amount amounts to $160,553.37. Because PLVTZ previously paid $118,503.68 of the cure amount, $42,049.72 (the "**Shortfall**") remains due and owing.

## Discussion

I now turn to my Conclusions of Law.

The Trustee contends that the Landlords currently hold $58,842.12 in prepaid taxes that should be applied as a credit to the Shortfall. The Trustee also contends that the remaining $16,000 of the prepaid taxes should be returned to the estate. The Landlords argue that they do not hold any amount of the money in the form of a security deposit, prepaid taxes, or otherwise, and they are owed $42,049.72 in administrative expenses to cure defaults, which occurred postpetition and prior to the Assumption Date, under the Elmhurst Lease. For the reasons that follow, I must agree with the Landlords.

*Section 365*

Section 365 of the Bankruptcy Code provides:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> (1) If there has been a default in an executor contract or unexpired lease of the debtor, *the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –*

---

[9]    Stein Decl. ¶ 6.

> *cures*, or provides adequate assurance that the trustee will
> promptly cure, *such default*[10]

Section 365 of the Code was enacted with the intention of giving debtors the ability to continue performance under their contracts, while still ensuring that contracting parties receive the benefit of the contract under which they are obligated to perform.[11]

The Trustee in this case does not dispute that it must cure any defaults under the Elmhurst Lease. Thus, pursuant to section 365, and in compliance with the Assumption Order I have previously issued, PLVTZ is responsible for curing the unpaid rent and additional monthly rent payments.

*Payment of the Shortfall*

As discussed above, real estate taxes in the City of New York are paid in advance of the period during which they accrue. Thus, as the Landlords point out in their motion, the taxes that PLVTZ paid to New York City in December 2002 applied to taxes that would accrue during the first half of 2003. Each additional monthly payment that PLVTZ paid beginning in January 2003 accumulated in a sinking fund held by the Landlords to make the July 2003 tax payment. Accordingly, the July 2003 tax payment applied to the last six months of 2003. Accordingly, PLVTZ did not pay double taxes for any period under the Elmhurst Lease.

The Trustee's argument that any amount owed to it may be set off against the cure payment is therefore irrelevant. Because PLVTZ did not pay double taxes, and did not pay a deposit to the Landlords, the Landlords do not hold any funds that belong to PLVTZ. Therefore, there is no amount of money to set off against the cure payment. PLVTZ remains liable for the

---

[10]   11 U.S.C. § 365 (emphasis added).

[11]   See, e.g. *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d. Cir. 1996), quoting *In re Superior Toy & Manuf. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996).

Shortfall and must pay $42,049.72 to the Landlords in accordance with section 365 of the Code and the Assumption Order.

## Conclusion

For the foregoing reasons, the Landlords' motion for an order directing the payment of the cure amount of $42,049.72 is granted. I find that PLVTZ did prepay taxes in December 2002 for the tax period beginning in January 2003 and ending in June 2003, but did not pay double taxes for that period. The additional monthly rent payments beginning in January 2003 applied to the following tax period. Thus, the Landlords do not owe a credit to PLVTZ and PLVTZ must comply with section 365 and must cure any defaults arising under the Elmhurst Lease.

Dated: New York, New York             _s/Robert E. Gerber_
       October **22**, 2009                  United States Bankruptcy Judge